# E. E. Morris, Appellant, v. W. S. Guffey and Emmet Queen, trading as Guffey & Queen.

*Principal and agent—Evidence—Declarations of agent—Cross-examination.—Credibility of witness.*

While an agent cannot by declarations subsequent to the act of agency affect his principals, his credibility as a witness may be assailed by showing that he made inconsistent statements to others. The effect of such statements, however, should be restricted by counsel in their argument and by the court in its charge to the contradiction of the witness.

*Evidence—Contradiction of party's witness—Cross-examination.*

The rule that a party cannot discredit his own witness does not apply to a case where plaintiff declares on a written contract in defendants' hands, and is compelled to call the agent of the defendants to whom he had delivered the contract, and in whose hands he last saw it, to account for its nonintroduction, and who is afterwards called generally by defendants.

*Evidence—Lease—Printed forms.*

In an action upon an oil and gas lease alleged to have been written by the defendants' agent, signed by the plaintiff and subsequently destroyed by the defendants' agent, it is improper to admit as evidence of its contents a particular form of lease used by defendants, and the fact that the defendants had taken many leases of a particular form, and under an arrangement with the recorder had the form printed in a lease book, which book had been used by the recorder.

*Practice, common pleas—Points—Charge to jury.*

Where points are presented in the alternative, and the plaintiff is entitled to the instructions asked in them, the court in affirming them commits no error in saying that if the jury do not find the facts as claimed in the points, the law as stated in them will have no application.

Argued Oct. 20, 1898. Appeal, No. 171, Oct. T., 1898, by plaintiff, from judgment of C. P. Greene Co., April T., 1896, No. 227, on verdict for defendants. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover instalments claimed to be due on a written oil lease dated March 20, 1894.

At the trial the evidence for the plaintiff tended to show that, at the instance of A. W. Campbell, an agent of the defendants, plaintiff signed a lease for the oil and gas in a tract of land which he was about to purchase, and to which he subsequently took title by deed from his father; that the only copy of the

lease had been left in the hands of the agent, Campbell. Defendants denied that the terms of the lease were such as plaintiff alleged. Campbell was called by plaintiff and testified that he did not sign the lease, and that the paper that Morris signed had been destroyed. Campbell was afterwards called as a witness for defendants to prove that the paper was not a lease at all. His testimony, his proposed cross-examination and the rulings of the trial court which form the basis for the first three assignments of error are sufficiently set out in the opinion of the Supreme Court.

W. S. Guffey, one of the defendants, testified as follows:

"Q. Do you know of any arrangement having been made by your firm with Mr. F. M. Shriver, ex-recorder of this county, who was the recorder in 1894, for having this form of lease, exhibit 'A' printed into his books for your form of lease?" This, for the purpose of showing that their leases were of such a uniform form used by them, they had the form printed in a lease book. As shown by lease docket No. 7, of Greene county, Pa., from pages 10 to 300, inclusive, such uniform forms were used by the record.

Plaintiff objected that the evidence is incompetent and irrelevant and does not prove nor tend to prove that A. W. Campbell used that form of lease in leasing the land of the plaintiff.

By the Court: Objection overruled, exception noted and bill sealed for plaintiff. [4]

"A. Of course I made the arrangement with Mr. Shriver in regard to putting these leases on record. I told him we would have a good many leases to go on record and I suggested he would get a book printed and fill in the writing. In getting our form of lease printed it would save a good deal of writing. Of course I never saw the book until I see it here now. I never knew whether he did that or not but I see the book here. Q. Then you did speak to him that you proposed to use this blank and suggested the form of the blank and suggested the getting of the book?"

Plaintiff renews his objection to the question now proposed to be asked the witness, the witness having stated he never examined the book until now.

By the Court: It is all embraced in the other ruling.

"A. Not until yesterday." "A. When I took these leases

to the recorder's office to have them recorded I suggested it would save a good deal of trouble if he would take either one of those two forms, and to do what little writing was done, and it would save him a good deal of writing.  Q. Then you provided him the form that was printed? A. Yes, sir."

Plaintiff's points and the answers thereto among others were as follows:

2. If the jury believes from the evidence that E. E. Morris, the plaintiff, on March 20, 1894, the date of the lease between himself and the defendants, informed A. W. Campbell, the authorized agent of the defendants, of the nature and character of his title to said land, and the said A. W. Campbell, after he was so informed of the condition of the plaintiff's title, accepted a lease from the plaintiff upon said land, and said lease has never been surrendered to the plaintiff, the defendants cannot now, after the expiration of the term of the lease, question the title of the plaintiff to the land so leased. *Answer:* That is correct and is affirmed, provided you find he had an equitable title which he could lease; the effect and quality of the title should not be questioned now, if the facts are found for him. [5, 6]

4. If the jury believes from the evidence that the lease between the plaintiff and the defendants was duly executed on March 20, 1894, the defendants or their agent, A. W. Campbell, had no legal authority or right to destroy such lease without the consent of the plaintiff first had and obtained, and if the said A. W. Campbell, the defendants' agent, destroyed such lease, without the plaintiff's consent, such destruction does not amount to a cancelation thereof, and is no bar to the plaintiff's right to recover on the same. *Answer:* That point is correct and is affirmed if you find the facts in his favor as contained here; if the lease was duly executed without any provisions on the part of the plaintiff or any subsequent act which was to be performed by the plaintiff here with reference to securing title papers from his father, and in addition to that he had such title which would support his making a lease. [7, 8]

Verdict and judgment for defendants.  Plaintiff appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions; (5–8) above instructions, quoting them.

*R. F. Downey*, for appellant.—It was long ago held by this court that the credibility of a witness must be judged of by the jury, and that any relevant testimony which tends to affect his credibility is competent: Magehan v. Thompson, 9 W. & S. 54; 1 Greenleaf on Evidence (14th ed.), sec. 449; Com. v. Hunt, 4 Gray (Mass.), 421; Mechanics' & Farmers' Bank v. Smith, 19 Johnson (N. Y.), 115; Dodge v. Bache, 57 Pa. 424; Masterson v. Masterson, 121 Pa. 605; Dampman v. Penna. R. Co., 166 Pa. 520.

The offer of the printed form of lease in the recorder's book was improper: Schoneman v. Fagley, 14 Pa. 380; Goersen v. Com., 99 Pa. 398.

When a question is distinctly proposed to the court, the party proposing it is entitled to a distinct answer, and it is error to refuse or evade it: Smith v. Thompson, 2 S. & R. 51; Slaymaker v. St. John, 5 Watts, 27; Hood v. Hood, 2 Grant, 235.

*Willis E. M'Cook*, with him *A. F. Silveus*, for appellees.— Plaintiff cannot discredit his own witness: Stearns v. Merchants' Bank, 53 Pa. 490; Coulter v. Express Co., 56 N. Y. 589; Bullard v. Pearsall, 53 N. Y. 230; Smith v. Price, 8 Watts, 447; Southwark Ins. Co. v. Knight, 6 Wharton, 330; Stockton v. Demuth, 7 Watts, 39; 1 Wharton on Evidence (2d ed.), 549; McDermott v. Hoffman, 70 Pa. 53.

A. W. Campbell was the agent of the defendants to take the lease, and his subsequent declarations were not admissible to affect the principal: Fawcett v. Bigley, 59 Pa. 411; B. & O. Relief Assn. v. Post, 122 Pa. 599; Huntingdon, etc., R. R. Co. v. Decker, 82 Pa. 123; Clark v. Baker, 2 Wharton, 340; Dodge v. Bache, 57 Pa. 424; Masterson v. Masterson, 121 Pa. 605.

The question proposed to be asked Campbell related to a fact that did not tend to contradict him even if established: Dampman v. Penna. R. Co., 166 Pa. 520.

The form of lease used by Campbell was competent. Testimony not relating to the particular thing in action, if it tends to corroborate the evidence of other witnesses, is admissible: Scott v. Hart, 4 Atl. Rep. 206; Baum v. Tonkin, 110 Pa. 574.

OPINION BY MR. JUSTICE DEAN, November 14, 1898:

Morris, the plaintiff, averred that he had leased to defend-

ants, by a writing dated March 20, 1894, the oil on a tract of eighty-one acres of land in Center township, Greene county; the lease was to run for two years at a monthly rental of $50.00, payable monthly; the amount claimed to be due at the date of suit was, computing interest, $1,269. The land had belonged to John Morris, father of plaintiff, who had resided on it, but several years before the date of the lease had removed to Kansas, leaving his son, the plaintiff, in possession as his tenant. The land adjoining this tract had all been leased for oil, and two wells, one on each side, at the date of the lease were being drilled. A short time before, the son had been in negotiation with his father by letter for the purchase of the tract, and the bargain had been about concluded. Before the deed had been delivered A. W. Campbell, the agent for defendants, visited the son upon the land and solicited a lease; he told the agent that, although he had bargained with his father for the land, yet he had not paid for it, and had as yet no deed; Campbell, however, notwithstanding the condition of the title, insisted on a lease, and one was agreed upon; Campbell went to the fence and wrote one with a fountain pen, which he signed, and Campbell, he alleged, signed for Guffey and Queen. Campbell took the lease with him, promising to send him a copy; afterwards, without sending Morris a copy, he destroyed it. Soon after, Morris by proper writings and payment of purchase money took title from his father. Defendants refused to recognize the lease averred by Morris, and alleged that while a lease had been prepared on altogether different terms than those claimed by Morris, it was stipulated that it was not to become operative until Morris got his deed; that Campbell frequently called thereafter to enquire if the deed had been received, and Morris said not, and at last he said to Morris, "We will drop the matter," and tore up the agreement; that Guffey & Queen had no knowledge of the transaction until more than a year afterwards, and then Campbell informed them that the lease had never gone into effect, because Morris had received no deed for the land.

Morris brought suit on the written contract as an executed one which could not be canceled or rescinded without the consent of both parties. The evidence at the trial was flatly con-

tradictory as between Morris and Campbell, and practically the case turned on which was entitled to credit before the jury.

The court below submitted the contradictory testimony to the jury, who found for defendants, and plaintiff appeals, assigning eight errors. The first is to a ruling of the court sustaining an objection to questions put by plaintiff to Campbell concerning the lease. It will be noticed that plaintiff averred the lease had been reduced to writing and signed, yet he failed to produce it, and alleged in his statement that it was in possession of defendants. He had subpœnaed both Queen and Guffey to produce it; each of them, when sworn, denied having possession of the paper or knowledge of it. He then called Campbell, in whose possession he had last seen it, and examined him only as to the execution of and existence of the paper. He answered that the lease had been drawn, had been signed by Morris, and that he had destroyed it. In answers not responsive to questions put he undertook to state that the paper was not a lease. The defendants then, against objection of plaintiff overruled by the court, attempted on cross-examination to elicit from the witness defendants' whole case, and succeeded to a great extent. Afterwards defendants called Campbell as their witness and sought to prove by him that the paper was not an executed lease, and was to be inoperative until Morris obtained the deed from his father, and that before this was done, on notice to him by Campbell, the paper was destroyed. On cross-examination, plaintiff proposed to ask him whether he did not, after he had solicited the lease from Morris, tell Jesse Scott, Isaac Orndorf and others, naming them, that he had leased the land from Morris; this for the purpose of contradiction, and as affecting Campbell's credibility; the question was objected to by defendants' counsel on the ground that the agent could not affect his principals by statements to third parties after the lease had been drawn. The proposition embraced in the objection may be conceded; an agent cannot by declarations subsequent to the act of agency affect his principals; but that is no answer to the purpose of the offer. Plaintiff could assail the credibility of the agent as a witness by showing that he made inconsistent statements to others. The effect of such statements, however, should be restricted only to the contradiction of the witness, both by counsel in their argument and the court in its charge.

Nor is the argument that plaintiff by calling made him his witness and, therefore, could not contradict him, well founded. That a party cannot discredit his own witness is a well established rule, but it must have a reasonable interpretation. The plaintiff declared on a written lease in possession of defendants, the production of which at the trial he could compel; the defendants, on oath, denied the possession; plaintiff was bound to call the agent to whom he had delivered it, and in whose hands he last saw it; not to prove its contents, for if the lease had been produced that would have ended controversy on that subject, but to account for the nonproduction of the paper. The questions put to Campbell related to but one subject, the signing of the paper by plaintiff and the destruction of it by witness; plaintiff did not destroy the paper nor witness its destruction. From the necessity of the case, on this matter he must call Campbell. By so doing he did not give credit to Campbell generally as a witness, nor even in the one particular as to which he was interrogated, for if Campbell had denied that he had taken the lease, or that he had destroyed it, plaintiff was then in the position of having made every effort to produce it, and could have followed by evidence of the execution of the paper and its terms, independent of Campbell, although such evidence would have flatly contradicted him. The rule invoked by defendants, that a party cannot discredit his own witness, has no application to these circumstances. The issue in great degree turned on the testimony of Morris and Campbell; the credibility of both was a very material fact in the cause, and any competent and relevant evidence affecting the credibility of either should have been admitted. We think the learned court below erred in sustaining the objection of defendants, set out in these assignments.

The fourth assignment was to overruling the objection of plaintiff to certain testimony offered by defendants. W. S. Guffey, one of defendants, being on the stand, defendants' counsel proposed to ask him this question: "Do you know of any arrangement having been made by your firm with F. M. Schriver, recorder, in 1894, for having this form of lease (exhibit A) printed into his books for your form of lease? For the purpose of showing that defendants' leases were of such a uniform form used by them that they had the form printed in

a lease book as shown by lease docket No. 7 of Greene county, from pages 100 to 300, inclusive; that such uniform forms were used by the recorder." To this evidence plaintiff objected on the ground that it was incompetent and irrelevant. It was admitted. The objection should have been sustained. Although the purpose is not fully and clearly disclosed in the offer, palpably it was intended the jury should infer that, as defendants had taken many leases of a particular form and had made special arrangements with the recorder to print a record for that form, the Morris lease must have been of the same character. That is, that, as Mr. Guffey had made an arrangement with a third person to print a particular form for recording leases, therefore, his agent, Campbell, in a fence corner, on a field on Morris's farm, had written the same form of lease with Morris; no such inference was warranted by the fact. In Schoneman v. Fagley, 14 Pa. 376, the question was, "Did you usually give receipts for notes received?" Which was objected to, and objection sustained. On assignment of error to the ruling this Court said: "The fact sought to be established could not be proved by evidence of a general practice after the witness had disclaimed knowledge in the particular instance." In the case before us, the witness had no knowledge of the instrument taken by Campbell, and his testimony was wholly irrelevant as to his arrangement with the recorder. This assignment is also sustained.

The remaining assignments complain that the court did not peremptorily affirm certain prayers for instruction. The plaintiff was entitled to the instructions he asked in these points, and the court concurred. They were all in the alternative, and the court followed the affirmation with the instruction that if the jury did not find the facts as claimed by plaintiff the law as stated in them would have no application. There was no error in this; it was possibly over caution, but could not prejudice plaintiff.

Because of the errors already referred to, however, the judgment is reversed and a v. f. d. n. awarded.