## Farmers' Mutual Fire Ins. Co. *versus* Bair & Shenk. Same *versus* Groff, to use of Bair & Shenk.

1. The admission of evidence not strictly in rebuttal is in the discretion of the court, and the exercise of such discretion is not reviewable unless for gross abuse.

2. The allowance of a leading question is within the discretion of the court, and is no ground for reversal.

3. Where a witness is called to contradict a former witness, who has stated that certain expressions were used, the proper practice is to ask whether such expressions were used, without putting the question in a general form by inquiring what was said.

4. Susquehanna Coal Co. *v.* Quick, 11 P. F. Smith 328, explained.

May 9th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Lancaster county:* Of May Term 1878, Nos. 96 and 97.

Attachment-execution issued by Bair & Shenk and Samuel Groff, to use of Bair & Shenk, against John K. Barr, defendant, and the Farmers' Mutual Fire Insurance Company of Pennsylvania, garnishee. The garnishee pleaded *nulla bona.*

On May 31st 1867, John K. Barr signed an application for an insurance in the defendant's company for $4000 on his house and furniture. The application was for a policy for the term of three years, from May 31st 1867, at noon, and was approved by the company and duly issued. In the fall of 1869 G. H. Hendrickson, who had become the agent of the company, made a survey of Barr's property, for the purpose of insuring other buildings which he owned, and about the 1st of May 1870, Barr signed an application for the term of three years, the policy to include the buildings theretofore insured and others, the whole amount of insurance being $8800. This application and the premium, $48.80, Barr handed to Hendrickson, who gave him a receipt, which set forth, "that he will be insured upon the property specified in said application, $8800, for three years from date, if the same be approved by the directors." On May 6th 1870, the company issued a policy to Barr,

[Farmers' Mut. Fire Ins. Co. *v.* Bair.]

insuring the property designated in his application for the term of three years, from May 3d 1870. On May 19th 1873, the property was destroyed by fire, and when Barr applied for payment of the loss the company refused, on the ground that the policy had expired.

At the trial the receipt of Hendrickson was produced, which bore date May 31st 1870, but the company alleged that the date was a forgery, contending that the receipt was dated May 3d 1870, which had been altered to May 31st 1870.

Barr testified: "Mr. Hendrickson made a survey of my property in the fall of 1869, for the purpose of insurance. I gave my note for $195.20, and cash $48.80, to effect an insurance which was to run for three years from the expiration of the old policy; the old policy I have not—the one that expired on May 31st 1870; I think I gave that policy to Mr. Hendrickson, and I think he did not make a new survey of the dwelling, but took it from the old policy. I don't know that he ever gave it back to me. It is not in my possession. I have no recollection of Mr. Hendrickson ever returning it to me. The old policy expired on May 31st 1870. The new policy was to expire three years from the expiration of the old one, which would be on May 31st 1873. I do not remember the exact day that I called on Hendrickson and gave him the note and paid him the cash to effect the new insurance, but it was some time in the latter part of April 1870. I was at Mt. Joy; Hendrickson called me across the street and reminded me of the expiration of my old policy of insurance; I then asked him whether I could arrange it that day; that I had proposed going away, and would probably not be home on the 31st of May, when the old policy expired. He said that if I was prepared it could be arranged that day. I mentioned to him about and spoke to him of the time of the expiration of the old policy. He said we could date the receipt on the 31st, on the day of the expiration of the old policy. I paid him $48.80, took his receipt for the amount; receipt dated May 31st, the expiration of the old policy. I signed an application without date or being filed—a blank application. I signed a note with the amount without date, with the understanding and agreement that the policy and the note should correspond with the receipt as to date. * * * Mr. Hendrickson did not return the fifty-five cents, or any other sum, for the unexpired term of the first policy from May 3d to May 31st 1870. I got no benefit of any allowance for that."

Hendrickson, on behalf of the company, testified, in effect, that Barr came to him on May 3d 1870 to make the application, and that it was not in the latter part of April; that witness drew the application on that day, and Barr then signed it; that the date of the receipt had been changed by the insertion of the "1" and the addition of "st;" that these alterations were not in the handwrit-

ing of witness; that Barr had received fifty-five cents as an allowance for the unexpired term, and that this was a full return, in proportion to the time the old policy had to run, on the amount insured, according to the rates of the company.

On cross-examination, Hendrickson testified:

Q. Did you not state to Mr. Barr in presence of H. B. Hertzler, that his policy would soon expire, that he must not neglect it, to which Barr replied in presence of Hertzler, "Can't I fix it now, as I intend going away, and will not be home when it is due;" to which you replied it could be fixed now, and did not Mr. Barr then give you $50, for which you gave him a receipt, the receipt marked J. B. L. 1. dating it (four weeks ahead), May 31st, in presence of Hertzler, Mr. Barr at the same time signing the. papers which you laid before him?

A. I have no recollection of any such thing. ·

In rebuttal the plaintiff called H. B. Hertzler, who testified as follows:—

Q. Did Mr. Hendrickson state to Mr. J. K. Barr in your presence, that his policy of insurance would soon expire and that he must not neglect it?

A. Yes, sir.

Q. Did Mr. Barr answer Mr. Hendrickson by saying, " Can't I fix it now, as I expect to be away and will not be home when it is due."

A. Yes, sir.

Q. Did Mr. Hendrickson say it could be fixed then?

A. Yes, sir.

Q. Did Mr. Barr hand Mr. Hendrickson then in your presence, $50, for which he gave Mr. Barr a receipt?

A. Yes, sir.

Shown receipt J. B. L. 1. and asked whether that is the receipt to the best of his recollection.

A. Yes, sir, this is the receipt.

Q. Was the receipt dated four weeks ahead—May 31st, in your presence?

A. Yes, sir.

Q. State whether in your presence Mr. Barr signed other papers there.

A. Yes, sir.

To all the foregoing questions the defendant objected, on the ground that they were leading and not properly rebuttal.

The court, Livingston, P. J., allowed them and noted an exception in each question.

Bair & Shenk had one judgment in their own right against Barr, and another as the assignees of Groff, who had another judgment. The verdict was for them respectively in the sums of $2502.58 and

[Farmers' Mut. Fire Ins. Co. v. Bair.]

$504.29.   The garnishee took this writ and assigned, among other errors, the allowance of the above questions.

*H. M. North* and *Thomas E. Franklin*, for plaintiff in error.— The plaintiffs were allowed to prove by Hertzler, when called in rebuttal, precisely what had been proved by Barr in chief. This was error: Stetson *v.* Croskey, 2 P. F. Smith 230. And all the questions put were leading: Susquehanna Coal Co. *v.* Quick, 11 Id. 328.

*S. H. Reynolds, R. W. Shenk* and *W. Leaman*, for defendants in error.—The admission or rejection of evidence in rebuttal is discretionary, and therefore not the subject of a writ of error: Duncan *v.* McCulloch, 4 S. & R. 480–482; Columbia Bridge *v.* Kline, 6 Penna. Law Jour. 317; Vandyke *v.* Townsend, 5 W. N. C. 55. The allowance of a leading question is a matter of discretion, and not the subject of a writ of error: Starkie on Evidence 148.

Mr. Justice PAXSON delivered the opinion of the court, May 20th 1878.

The assignments of error, from one to seven inclusive, allege that the court below erred in overruling the objections to the questions put to Henry B. Hertzler, a witness on behalf of the plaintiffs below. The questions were objected to on two grounds, viz: 1. That they were not properly rebuttal; and 2. That they were leading. The first does not need an extended discussion. It is sufficient to say that it has been repeatedly held that the admission of evidence not strictly in rebuttal is in the discretion of the court and not error; the latest case being Vandyke *v.* Townsend, decided at the last term of this court, 6 W. N. C. 55. The exercise of a discretion is not reviewable here unless for gross abuse.

Nor have we any difficulty as to the second ground of objection. While there are instances in the books where judgments have been reversed for the refusal to allow leading questions where the party was entitled to put them, I know of no reversal in Pennsylvania for allowing a leading question. Susquehanna Coal Co. *v.* Quick, 11 P. F. Smith 328, is not an exception, as in that case there were a number of other assignments of error which were sustained. The reason for this is manifest. The form of a question, whether it shall be put as leading or otherwise, depends not upon an inflexible rule, but upon a variety of circumstances which must of necessity be left to the discretion of the court below. Thus a party may be surprised by his own witness, and after he has placed him on the stand, discover that he is hostile, in which case it is settled law that he may be asked leading questions as if upon cross-examination. The rule is thus laid down in Starkie on Evidence 147 : " Thus a party's own witness, who, having given one account of the matter,

when called on the trial gives a diffierent account, may be asked by the party calling him, whether he had given such account, stating it, to the attorney; and if a witness called stands in a situation which of necessity makes him adverse to the party calling him, counsel may cross-examine him." The mere manner of the witness when on the stand may be such as to justify the court in permitting leading questions. It is needless to multiply instances. It is said in Sharswood's notes to Starkie, at page 150, that "the allowance of a leading question is within the discretion of the court, and not the subject of a writ of error, although the refusal to allow a party to put a leading question who is entitled to do so upon cross-examination is;" and a number of authorities are cited in support of the text. The same doctrine is laid down in Greenleaf, § 435. We are not obliged to go so far in this case, however. The witness Hertzler was called by the plaintiffs to contradict Hendrickson, a witness called by the defendants, after the ground had been previously laid by the cross-examination of Hendrickson. Thus, taking the first assignment of error as an illustration, Hendrickson had been asked upon his cross-examination: "Did you not state to Mr. Barr, in presence of H. B. Hertzler, that his policy would soon expire; that he must not neglect it?" The ground having thus been laid, the plaintiffs called Mr. Hertzler to the stand to contradict Hendrickson as to this particular matter. How was this to be done? Clearly by putting the question to the witness in the same language in which it had been put to Hendrickson. Hertzler was therefore asked, "Did Mr. Hendrickson state to John K. Barr in your presence that his policy of insurance would soon expire, and that he must not neglect it?" Nothing less than this would have been just to the witness sought to be contradicted. Nothing less would amount to a contradiction. Unless it is a denial in terms it is no denial at all. I have always understood this to be the practice, and I am not aware of any authority against it. The only case cited in opposition to this view, Susquehanna Coal Co. *v.* Quick, *supra*, has no application. In that case the witness, Quick, was not called to contradict anything that another witness had said, but merely to prove what occurred at a conversation. The witness having been asked a question clearly leading, it was very properly held to have been improper. The rule is laid down in Starkie, at page 148, to be: "So, where a witness is called in order to contradict the testimony of a former witness, who has stated that such and such expressions were used, or such and such things were said, it is the usual practice to ask whether those particular expressions were used, or those things were said without putting the question in general form by inquiring what was said. If this were not to be allowed, it is obvious that much irrelevant and inadmissible matter would frequently be detailed by the witness."

Had the questions been put in the alternative they would have

[Farmers' Mut. Fire Ins. Co. v. Bair.]

been entirely free from objection.  As it is, they furnish no ground for reversal.

The remaining assignments of error were not pressed, and need not be discussed.

The judgment in each case is affirmed.