## Commonwealth *v.* Bruno, Appellant.

Argued September 24, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph T. McDonald* and *James W. Scanlon,* for appellant.

*John W. Murphy,* Assistant District Attorney, with him *Michael J. Eagen,* District Attorney, for appellee.

OPINION BY MR. JUSTICE DREW, November 26, 1934:

The defendant, Frank Bruno, was convicted of murder of the first degree and the penalty fixed at death. From the judgment and sentence entered against him he took this appeal.

In the early morning of March 2, 1932, a double house of the ordinary type, owned by Rocco Riccardo, at 245 Mill Street, Borough of Dunmore, Lackawanna County, burst into flames. One half of this house was occupied by Riccardo, the other half by Elmer Myers and his wife and family, under a lease from Riccardo. During the course of the fire, which substantially consumed the building, Marion Myers or Wells, eleven years of age, a daughter of Mrs. Myers by another marriage, was burned to death. Bruno and Riccardo were jointly indicted for murder, and later a severance was granted to Riccardo.

At the trial, various witnesses testified to facts showing a conspiracy to burn this building for the purpose of collecting insurance; it appeared that Riccardo had promised Bruno the job of burning the building, and also that Bruno had previously, for pay, set another fire for Riccardo for the same purpose; that Riccardo had let it be known, shortly before the fire, that he was going to Pittsburgh, and that he did not return to the Mill Street neighborhood until two days after the fire; that a few hours before the fire was started, Bruno was seen about the premises with a five-gallon can, that an odor of gasoline was then observed by persons on the Myers side of the house, and that his car was parked near by; and that, when Bruno was seen a few days later, his face appeared to be burned and his hair singed. It was also testified that at a meeting of Bruno, Riccardo and others, some time after the fire, preparations for Bruno's defense to another charge of arson were discussed, and Bruno then said, with reference to the Mill Street fire, "If there is any funny business going on, if I burn you will all burn." There was evidence that insurance policies were assigned by Riccardo for the purpose of furnishing financial assistance to Bruno in the present case. It further appeared from Bruno's own testimony that he had previously been three times convicted on charges of arson, with regard to two of which he admitted he was guilty and had offered perjured alibis. On his own admission he was a professional incendiary.

In this case, as in the other arson cases in which he was convicted, his defense was an alibi. He said that he took no part in setting fire to this dwelling and that on the evening of the fire he hired a U-Drive-It car in Scranton and drove to Carbondale to deliver whiskey which had been ordered by telephone message from the Dew Drop Inn, and that he did not get back to Dunmore until after the fire. Records of the U-Drive-It company and testimony of two of its employees corroborated Bruno's statement that he had hired a car that night. For the Com-

monwealth the owner and the tenant of the Dew Drop Inn testified in rebuttal that they neither saw nor talked to Bruno that evening, and that there had been no telephone service at the inn on March 1st or for some time prior thereto. Other testimony, offered for the defense, was to the effect that Bruno did not appear to have been burned when he was seen on the morning after the fire, and that burns for which he was treated on June 18, 1932, were of fresh origin.

In this case we are concerned with three statutory provisions: section 74 of the Act of March 31, 1860, P. L. 382*, which provides that "All murder which shall be ......committed in the perpetration of, or attempt to perpetrate any arson......shall be deemed murder of the first degree"; section 137 of the Act of 1860, supra, which defined arson as follows: "If any person shall maliciously and voluntarily burn or cause to be burned ......any......dwelling house of another,......the person so offending shall be adjudged guilty of felonious arson"; and section 1 of the Act of April 25, 1929, P. L. 767, which extended the felony of arson to include the malicious burning of one's own dwelling house, in the following words: "Any person who wilfully and maliciously sets fire to, or burns,......any dwelling house, ......whether the property of himself or of another, shall be guilty of the felony of arson."

Defendant first contends that under the indictment he cannot be convicted of murder of the first degree. His argument is this: The indictment, since its language follows that of the Act of 1929, alleges a death resulting from the perpetration of an arson within the meaning of that act; arson as defined in the Act of 1929, however, is broader than the arson defined in the Act of 1860; but arson as used in the murder section of the Act of 1860 can mean no more than the offense defined in the

---

* This section substantially reënacted section 2 of the Act of April 22, 1794, P. L. 186.

arson section of that act; therefore, inasmuch as defendant cannot, under the provisions as to first-degree murder in section 74 of the Act of 1860, be convicted of murder committed in the perpetration of arson as broadened by the Act of 1929, he cannot be convicted of murder of the first degree under this indictment. He further contends that since he was hired by Riccardo, the owner of the house, to set the fire, he can be guilty of no greater crime than his principal, and therefore he would not be guilty of burning the dwelling house of another, and his offense would not constitute arson, within the meaning of the Act of 1860.

To this argument it may be answered that, even if it be admitted that arson as defined in the Act of 1860 cannot include the offense of burning one's own dwelling which is made arson by the Act of 1929, this indictment is still sufficient. The crime with which defendant was charged in the indictment, and for which he was tried, was murder, and not arson. The indictment alleged that he "then and there feloniously, wilfully and of malice aforethought did kill and murder the said Marion Myers." Having properly charged him with murder, then, the Commonwealth was at the trial required to do no more than show the elements of murder provided for in the Act of 1860, in order to invoke the penalty imposed by that act. The fact that the language of the indictment in setting forth the arson was similar to that of the Act of 1929 is of no avail to defendant. Section 20 of the Act of March 31, 1860, P. L. 427, provides: "In any indictment for murder......it shall not be necessary to set forth the manner in which, or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder, to charge that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased." See Goersen v. Com., 99 Pa. 388, 397; Com. v. Buccieri, 153 Pa. 535, 547. Where murder is committed in the perpetration of a felony, the perpretation of such felony need not be set forth in the in-

dictment: Com. v. Flanagan, 7 W. & S. 415; People v.
Witt, 170 Cal. 104; State v. Juliano, 138 Atl. (N. J.) 575.
Accordingly, that portion of this indictment which sets
forth arson may be considered surplusage and so may be
disregarded.

Since, therefore, the indictment properly charged de-
fendant with murder in unmistakable terms, the Com-
monwealth was free to establish that the crime had been
committed in any manner which it could support with
sufficient evidence. It attempted to prove murder com-
mitted in the perpetration of an arson, and hence it re-
mains to consider whether an arson sufficient to satisfy
the murder section of the Act of 1860 (P. L. 382) was
shown.

At common law, arson consists of the wilful and mali-
cious burning of the dwelling house of another: 3 Inst.
66; 1 Hale, P. C. 566; 1 Hawk. P. C. (8th ed.) 137; 4 Bl.
Comm. 220; 2 East, P. C. 1015. It is an offense against
possession, however, and the "dwelling house of another"
is not that of the owner of the fee (Breeme's Case, 2 East,
P. C. 1026; Holmes's Case, Cro. Car. 376; State v. Fish,
27 N. J. L. 323; State v. Keena, 63 Conn. 329), but that
of the occupant: People v. Van Blarcum, 2 Johns.
(N. Y.) 105; State v. Toole, 29 Conn. 342; see Rex v.
Wallis, 1 Moody C. C. 344. It follows that a landlord
who sets fire to his own house in the possession of a tenant
is guilty of arson: 2 East, P. C. 1024; 4 Bl. Comm. 221;
Com. v. Gentzler, 15 Pa. Dist. Rep. 934; see Snyder v.
People, 26 Mich. 106. A fortiori, one who is hired by the
landlord to set such a fire is guilty of arson. The posses-
sion by Elmer Myers of one half of the house under a
lease from Riccardo was abundantly shown by testimony
at the trial and not in any way denied by defendant or
any of his witnesses. Consequently, the act of defendant
in setting fire to the house constituted common-law arson,
inasmuch as it was the wilful and malicious burning of
a dwelling house in the possession of another. There can
be no doubt whatever that "arson" as used in the murder

section of the Act of 1860 (P. L. 382) was intended to include common-law arson, in view of the fact that section 137 of that act embraced in its definition of arson the malicious burning of any "dwelling house of another." In similar arson statutes in other jurisdictions, the phrase "of another" has been construed to mean "in the possession of another," for the reason that such was its meaning at common law: People v. Handley, 93 Mich. 46; State v. Hannett, 54 Vt. 83; Kopcyznski v. State, 137 Wis. 358. For the same reason, that phrase in the arson section of the Act of 1860 (P. L. 382) must be so construed. It follows, therefore, that one who wilfully sets fire to a dwelling house in the possession of another, and in the perpetration thereof causes the death of a person, may be convicted of murder of the first degree, under the Act of 1860 (P. L. 382).

Defendant leans heavily on Com. v. Exler, 243 Pa. 155, where it was held that "rape" as used in the murder section of the Act of 1860 (P. L. 382), which meant common-law rape, could not include the new offense of so-called statutory rape which was created by the subsequent Act of May 19, 1887, P. L. 128, section 1. That case is not similar to the case at bar. There, this court held that the penalty fixed by the legislature in 1860 for murder committed in the perpetration of common-law rape could not be extended to a killing committed in the course of acts which did not constitute common-law rape but a subsequently created offense, statutory rape, since the legislature did not have and could not have had the latter in mind when it determined upon the penalty. In the present case, however, whether or not defendant's acts constituted arson under the Act of 1929, there can be no doubt that they did constitute common-law arson, and since he was indicted and tried for murder in the perpetration of an arson, his crime fell squarely within the provisions of the murder section (section 74) of the Act of 1860 (P. L. 382).

It is further asserted by defendant that the charge to the jury was inadequate, in that it failed to define arson. While the court did not define arson in technical terminology, it did something better, viz., explained to the jury what interpretation of the facts was essential to a finding of arson and murder. The only matters seriously in controversy were whether or not the fire was of incendiary origin and whether or not it was set by defendant. The trial judge made it clear to the jury that a verdict of guilty depended on their answering these questions in the affirmative. At the end of the charge, counsel were asked whether any further instructions were desired, and no request on this point was made. Where the court's charge substantially covers the points in dispute, and no further requests for charge are made by defendant's counsel, although opportunity for such is given, defendant cannot on appeal complain of the inadequacy of the charge without showing that the alleged omissions contributed to the jury's verdict to defendant's prejudice: Com. v. Pacito, 229 Pa. 328; Com. v. Varano, 258 Pa. 442; Com. v. Winter, 289 Pa. 284; Com. v. Mendola, 294 Pa. 353. Nothing of the kind appears here.

Defendant complains of the court's failure to instruct the jury on the consideration to be given the testimony of coconspirators. The jury was specifically warned that the associates of criminals are not "high-class witnesses." Furthermore, it is not clear, as the court below points out, that any of the accomplices in this crime testified against defendant; and there were plenty of witnesses for the Commonwealth who could not possibly be called accomplices. It is well settled that the determination of the sufficiency and corroboration of accomplices' testimony is for the jury, which is not forbidden by any rule of law to convict even in the absence of corroboration: Carroll v. Com., 84 Pa. 107; Com. v. DeMasi, 234 Pa. 570; Com. v. Elliott, 292 Pa. 16. Although it is a common and wholesome practice for trial judges to warn the jury as to the care they should take in weighing the testimony of

alleged accomplices and the importance of corroboration of such testimony, a failure so to instruct is not reversible error unless a clear abuse of judicial discretion is shown: Com. v. Elliott, supra. No abuse of discretion has been shown in the present case.

It is further objected by defendant that the court below allowed the Commonwealth to ask some of its witnesses leading questions. This objection is not well taken. The scope and use of leading questions must be largely entrusted to the discretion of the trial court (Farmers' Mut. Fire Ins. Co. v. Bair, 87 Pa. 124; Gantt v. Cox, 199 Pa. 208; Com. v. Reeves, 267 Pa. 361), particularly where, as in this case, many of the Commonwealth's witnesses were associates of defendant and naturally reluctant to testify against him.

We have considered the remainder of appellant's assignments of error and find them to be without merit. After a careful examination of the whole record, we are convinced that all the ingredients necessary to constitute murder of the first degree have been sufficiently proved to exist. The defendant received a fair trial and was defended by able counsel, but was overwhelmed by the testimony of the Commonwealth and his own testimony, all of which showed him to be guilty beyond any doubt of the crime for which he has been sentenced to pay with his life.

The assignments of error are all overruled, the judgment and sentence of the court below are affirmed, and the record is remitted for execution in accordance therewith.