## Commonwealth *v.* Gurreri, Appellant.

Argued December 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before LIVERANT, J.

*Nevin Stetler*, with him *Leo E. Gribbin, Jr.*, for appellant.

*Donn I. Cohen*, Assistant District Attorney, with him *Frank B. Boyle*, District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, J., March 21, 1962:

The defendant, Russell Frank Gurreri, appeals from the sentence which was imposed upon him by the court below after his conviction by a jury on the charge of bookmaking and after the court below refused his motions for a new trial and in arrest of judgment.

On September 20, 1960 the Pennsylvania State Police raided a house in York County, Pennsylvania, and found therein Roger Markle and Russell Frank Gurreri. Markle was seated at a card table with a telephone, surrounded by bookmaking paraphernalia. Gurreri was nearby on a sofa. Shortly after the arrival of the police phone calls were received by the State Police in which the callers sought to place bets or obtain racing information from Gurreri. Markle admitted his guilt and entered a plea of guilty to an indictment charging him with bookmaking. Gurreri plead not guilty and was tried by a jury. At the trial Markle was called as a witness by the Commonwealth and

asked in direct examination whether he was conducting a bookmaking business at the raided premises. He admitted that he was. He was then turned over to the defendant for cross-examination and he then testified that he was not associated with Gurreri in the bookmaking business. The Commonwealth then asked permission to examine Markle in regard to certain of the records which had been found in his possession and which indicated that Gurreri was guilty of bookmaking at the time of the raid.

The principal contention of the appellant Gurreri is that the Commonwealth should not have been permitted to impeach the testimony of Markle without first pleading surprise. In *Com. v. Deitrick*, 221 Pa. 7, 15, 16, 70 A. 275, our Supreme Court said: "However much it was insisted upon formerly that a party could not be allowed to impeach by contradiction witnesses called by himself, the rule which prevented it has not only been much relaxed, but, as Mr. Wigmore in his treatise on evidence shows, has been in most jurisdictions wholly abrogated. In England, where it had its origin, some features of it, preserved by statute, yet remain, but the very marked tendency in this country is to escape from it entirely. Our own state furnishes no exception. In Gantt v. Cox & Sons Co., 199 Pa. 208, speaking by the present chief justice, we said: 'The rule that a party calling a witness is not permitted to ask leading questions and is bound by his testimony, is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness. It is a discretion not susceptible of exactly defined limits before hand, but to be exercised in the interests of justice and a fair trial under circumstances as they arise.'" See also *Com. v. Joseph*, 182 Pa. Superior Ct. 617, 623, 624, 128 A. 2d 121; *Morris v. Guffey & Queen*,

188 Pa. 534, 41 A. 731. This is particularly true where the witness is an associate of the defendant and naturally reluctant to testify against him: *Com. v. Bruno,* 316 Pa. 394, 403, 175 A. 518. It is entirely probable that Markle was "taking the rap" for his associate Gurreri. See *Com. v. Cerzullo,* 175 Pa. Superior Ct. 330, 104 A. 2d 179.

Professor Wigmore, in his monumental treatise on evidence, 3d edition, §909, at page 420, also says: "The general rule itself (against impeaching one's own witness) is so fraught with irrationality that to apply it with rational deduction is almost impossible. A rule which rests upon a fiction is apt to lead to mere quibbles when a detailed and consistent development is attempted. The quiddities and meaningless distinctions which occur in the present application serve more than anything else to exhibit the arbitrary absurdity of the rule at large." Again, at page 422, he says: "Such seem to be the general considerations that may be invoked in solving the specific situations now to be dealt with. No doubt it may all seem to be a matter of fine distinctions, of petty quibblings, and of artificial logomachy. But if we are building a rule upon fiction there is nothing else to be done but to carry out the assumed requirements of the fiction. It is all a ridiculous structure in the air of legal fancy; but so long as the rule exists, it is to be applied with at least a pretence of rationality. Concede the falsity of the foundation, and then the entire structure may be abandoned. Until then, it remains to apply the rule to concrete situations as best we can."

In *Fetterolf v. Yellow Cab Co.,* 139 Pa. Superior Ct. 463, 471, 11 A. 2d 516, we said: "In support of their contention that a party calling a witness is bound by his testimony in so far as it may be against him, counsel for the city cite Henry on Pennsylvania Trial Evidence, (2d ed.) p. 526, but omit this qualification

by the author: 'This rule has not been so strictly enforced in recent decisions, however, and when necessary to prevent injustice the tendency is to permit parties to elicit the truth without strict regard to technicalities, and contradiction may be permitted though the rule as to hostile and adverse witnesses is not invoked and surprise is not pleaded. The mere fact of calling a witness does not mean that the party thereby admits as true everything the witness may say, and he is not estopped from proving the facts to be otherwise by other evidence.' "

The real question is whether to permit impeachment constitutes an abuse of discretion by the trial court: *Com. v. Reeves,* 267 Pa. 361, 110 A. 158. The Commonwealth sought to impeach the witness Markle by showing that certain words in his own handwriting in the bookmaking paraphernalia found on the table meant that Markle was laying off a bet to the defendant Gurreri. The relevant language in Exhibit No. 3 is as follows: "Bob K Md 9 R-Pass 20/1. Bob to Rosy-Md 9 R-Pass 20/1." The examination of Markle by the Commonwealth really did not impeach him because he testified that the above language meant that Rosie (who was admittedly Russell Frank Gurreri) was making a bet with him. Actually this testimony was most favorable to the defendant. The fundamental reason for the impeachment rule is that the Commonwealth guarantees that everything its witness Markle would say, whether in direct examination or on cross-examination, is the truth. If this basic reasoning is sound, this evidence would be more helpful to the defendant than the Commonwealth and therefore it cannot be successfully argued that the action of the court below was harmful to the defendant. On the contrary, it seems to us that its action was helpful to him. Under all the circumstances present in this case we cannot say that the action of the court below constituted an abuse of discretion.

The attorney for the appellant also complains of the court's action in permitting State Police Officer Robert L. McCartney, who qualified as an expert in this field, to testify that the notation in the books of Markle, "Bob to Rosie," in his opinion meant the layoff of a bet to Rosie. The real purpose of this substantive evidence was to show Gurreri's connection with the illegal transaction rather than to impeach the testimony of Markle. This evidence was found in the presence of the defendant, Gurreri, as well as in the presence of Markle, when the raid was made. The officers had a perfect right to explain the meaning of the evidence, particularly when it required the opinion of an expert to interpret it. If this evidence be treated merely as impeaching Markle's veracity, we still believe it was not an abuse of discretion for the court below to admit it, under all the circumstances of this case.

Complaint is also made by the attorney for the appellant of the fact that the court below in its charge to the jury referred to Officer McCartney's testimony as positive, substantive evidence. At the end of the court's charge, counsel were asked for any errors or omissions. Counsel for the defendant said: "I have one." A side bar conference then occurred, after which the court presumably covered the subject of the side bar conference. No further exception was taken by counsel for the defendant and it may be assumed that he was entirely satisfied with the court's clarification. It will be seen from the above that there was no exception to the court's charge calling Officer McCartney's explanation "substantive evidence." In fact, there was not even a general exception to the charge. In our opinion the court committed no error and certainly if error was committed it was not fundamental.

Complaint is also made by counsel for the appellant that telephone calls were received by the police officers involving Gurreri at the time of the raid when Gurreri

was not present. We held in *Com. v. Smith,* 186 Pa. Superior Ct. 89, 140 A. 2d 347, that such calls are admissible. It is true that in the case of *Com. v. Prezioso,* 157 Pa. Superior Ct. 80, 41 A. 2d 350, we did say, at page 85, that such evidence should be admitted with caution and that it should not be received at all except when the circumstances rebut every suspicion that it may be spurious. We think the circumstances in the present case are sufficient to rebut such a suspicion. The evidence shows that the defendant Gurreri arrived at the house where the raid was made at about 2:45 p.m. and that he was there about 25 minutes, which would then place it about 3:15 p.m. when the officers raided the house. The defendant was seated on a sofa near the card table at which was seated Roger Markle and upon which table was considerable bookmaking paraphernalia. It was admitted by Markle that bookmaking was being conducted in the premises at the time the raid was made. During the time the police officers were present 15 or 20 telephone calls were received, of which two were for "Rosie." One telephone call inquired the results of a race and the other telephone call was to place a bet. The mere fact that Gurreri may not have been in the room when these calls were received is immaterial. If he was not in the room at the time the calls were actually received, he had been there a very short time before. The calls evidenced the fact that some outside persons thought he was there and thought they were talking to him. This would indicate to any fair-minded person that it must have been his practice to receive telephone calls placing bets at this time and place. We can see no abuse of discretion under all the circumstances of this case in admitting this evidence. See *Com. v. DuHadway,* 175 Pa. Superior Ct. 201, 103 A. 2d 489.

Judgment of sentence is affirmed and appellant is directed to appear in the court below at such time as

he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal was made a supersedeas.