Commonwealth *v.* Murray, Appellant.

Argued October 9, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused May 1, 1970.

*Fred E. Baxter, Jr.,* Assistant Trial Defender, with him *George H. Ross,* Public Defender, for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1970:

About 11 a.m. on July 8, 1966, a retail jewelry store located on the second floor of the Plaza Building in downtown Pittsburgh was held up by two armed robbers. During the holdup, the operator of the store was fatally shot. Later the same afternoon, William Murray and Garfield Gordon were taken into police custody and charged with the murder and robbery. Johnnie Lee Smith was also arrested and charged with driving the automobile in which the felons escaped from the scene. In separate jury trials, all three individuals were convicted of murder in the first degree, and the punishment was fixed at life imprisonment. After post-trial motions were denied and sentences were imposed in accordance with the jurys' verdicts, appeals were filed in this Court. We previously affirmed the convictions and sentences of Gordon and Smith. See *Commonwealth v. Gordon,* 431 Pa. 512, 246 A. 2d 325 (1968), *cert. denied,* 394 U.S. 937, 89 S. Ct. 1215 (1969), and *Commonwealth v. Smith,* 432 Pa. 517, 248 A. 2d 24 (1968). The appeal of Murray is presently before us for disposition.

A study of the record readily manifests that the trial evidence was amply sufficient to sustain Murray's conviction, and this is not disputed in this appeal. However, it is urged that certain errors occurred in the course of the prosecution proceedings which require a new trial. We disagree and hence will affirm.

It is first argued that Murray's arrest was illegal in that it was not based on probable cause.[1] We first note that this issue was never raised in the court below. Nevertheless, our examination of the record is persuasive that the contention lacks merit.

In pertinent part, the Commonwealth's evidence established the following:

The robbery was committed by two armed men, one of whom was wearing a red shirt. As these two men fled from the Plaza Building immediately following the crime and hurried across the street, one accidentially dropped a loaded automatic revolver in the cartway. A nearby policeman who witnessed this occurrence tried to stop the men for questioning, but they ran to a waiting automobile and fled. Within an hour, Garfield Gordon, wearing a red shirt, and Murray, the appellant, appeared together at the home of Mr. and Mrs. Charles Gordon, Garfield Gordon's brother and sister-in-law. Garfield Gordon was bleeding from a wound in the midsection of his body and told his brother that he had been shot during a robbery and that Murray "had what was taken." When Murray arrived at the Charles Gordon residence, he had in his possession two guns which he threw under a couch in the living room. Shortly thereafter, Murray left the premises and Charles Gordon retrieved the guns and hid them in a garbage pail. Charles Gordon then drove Garfield to their mother's home in an automobile and during this period Garfield warned his brother "to get rid of the guns." Charles Gordon then returned to his own residence and took the guns to a river near McKees Rocks where he threw them into the water. When he returned again to his own residence at about 3 p.m., the police were waiting and took him into custody. At this time, Sylvia Gor-

---

[1] Subsequent to his arrest, Murray was identified by witnesses who saw him in the Plaza Building and fleeing from the scene.

don, the wife of Charles Gordon, who was at home when Garfield Gordon and Murray arrived there about one hour after the robbery and homicide, as before related, told one of the investigating officers "certain events that occurred that day,"[2] and "as a result of this information," volunteered by Sylvia Gordon, Garfield Gordon and Murray were subsequently taken into police custody, Murray's arrest occurring at 4:20 p.m.

"Probable cause" to arrest exists if "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief" that the suspect had committed or is committing a crime. *Carroll v. United States,* 267 U.S. 132, 162, 45 S. Ct. 280, 288 (1925). See also, *McCray v. Illinois,* 386 U.S. 300, 87 S. Ct. 1056 (1967) ; *Commonwealth v. Brayboy,* 431 Pa. 365, 246 A. 2d 675 (1968). And as we stated in *Commonwealth v. Marino,* 435 Pa. 245, 253, 255 A. 2d 911, 916 (1969) : "While it is true that suspicion and conjecture do not constitute probable cause [*Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964)], it is equally true that probable cause means less than evidence which would justify conviction: United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741 (1965). It is only the probability, and not a prima facie showing, of criminal activity that is the standard of probable cause. Beck v. Ohio, 379 U.S. 89, 85 S. Ct. 223 (1964)."

Considering all of the facts established by the record, the police clearly acted within permissible constitutional standards in arresting Murray in this case.

Murray next contends that his right to a fair trial was seriously prejudiced by certain trial testimony of

---

[2] The specifics of the information related were not elicited either during the direct or cross-examination testimony of this officer at trial, presumably because the legality of this arrest was not questioned at trial.

an F.B.I. agent. It appears that this agent, working out of the Pittsburgh office of the Federal Bureau of Investigation, had been alerted by his supervisors previous to the occurrence of the crime here involved to be on the lookout for a Buick automobile bearing Pennsylvania Registration No. 898795, which was believed to have been used in a bank robbery then under investigation.

About 10:20 a.m. on the date of the crime involved, this agent observed a Buick automobile fitting the description and license number given him traveling on Allegheny Avenue in Pittsburgh. He followed it for several blocks in his automobile but finally lost contact in the midtown area of the city at a point near the Plaza Building. In testifying at trial as to his observance of this automobile a short time before the robbery and murder of which Murray stands convicted, and as to the reason for his surveillance, the following exchange took place: "Q. When you left the Office, what particular assignment did you have? A. We were assigned routine duties dictated by our case load. The particular morning in question, we were alerted to be on the lookout regarding a bank robbery matter for a Buick bearing Pa. Registration 898795."

A motion to withdraw a juror was immediately entered by Murray's counsel which the court denied. However, the court did instruct the jury in reference to this testimony in the following manner.

"The Court: Members of the Jury, I wish to caution you that the witness's reference to being on the alert for a vehicle presumably used in a bank robbery should be disregarded by the jury. It is not involved in this case, whether there was or was not a bank robbery that had taken place. This was merely the witness's explanation of how he happened to be at a certain place, but dismiss from your minds the question of a bank robbery prior to the time on this particular day."

Assuming that the testimony under discussion was improper, nevertheless, in view of the court's remedial instruction, the incident is not of sufficient import to constitute reversible error.

We have considered the sole remaining asserted assignment of error and conclude that it lacks substance and does not require discussion.

Judgment affirmed.