Commonwealth *v.* Settles, Appellant.

Argued November 25, 1970. Before Bell, C. J., Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Frank Carano*, with him *David H. Kubert*, for appellant.

*Arthur R. Makadon*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 18, 1971:

Appellant, his brother Dennis, and Dennis's "common-law" wife, Mattie Ree Mitchell, lived together at 3612 Mount Vernon Street in Philadelphia. On February 9, 1969, at about 11 a.m., Sylvester Melvin, known as Ves, came to the door of that house, where appellant, gun in hand, met him. Then, in the words of the statement which appellant made to the police: "Ves was standing on the step right in front of the door and he had his hand in his pocket and I thought I saw a gun. Ves was walking in the front door so I shot him. I emptied the gun; it had six shots in it. I guess I lost my mind." Melvin was found to be unarmed.

At his trial, appellant and his counsel attempted to establish that he had shot Melvin in self-defense. The following history was recounted in testimony:

Mattie Ree Mitchell had been seeing Sylvester Melvin for a few months prior to the shooting and had lived with him for a two-week period shortly before the shooting. She had returned to the appellant's brother,

with whom she had been living for four years. The day before he met his death, Sylvester Melvin had broken into the house on Mount Vernon Street, gone upstairs to Miss Mitchell's room and forced her to go with him to his own house, where he had beaten her with a belt. Appellant, who was in an adjoining room when Melvin forced Miss Mitchell to leave with him, was very upset by the event. When he recounted what he had seen to his brother Dennis, he had been told not to worry, that if his common-law wife wanted to go back to Melvin, Dennis wasn't going to stop her and appellant shouldn't either. Later that afternoon, Mattie Ree Mitchell returned, but said nothing of the beating about which she later testified in court. That evening, according to appellant, he confronted Sylvester Melvin in a bar, where Melvin, displaying a gun sticking out of his pocket, threatened to kill appellant's brother and to kill appellant, too, if he got in Melvin's way.

Although appellant's brother wasn't worried about the threat, appellant was. According to appellant, that was why he carried the gun when he saw Melvin coming to the door on the following day, and that was why, when Melvin pushed the door open in his face, appellant shot him. Except for appellant, there were no eyewitnesses to the shooting. Appellant's brother Dennis and Mattie were in the kitchen in the back of the house. After the shooting appellant gave the gun to Mattie, telling her to give it to the police, and ran into the street. Later that day, when the police came into the neighborhood to investigate the killing, appellant voluntarily identified himself to an officer as the man who had killed Melvin.

The jury did not accept appellant's contention of self-defense. On October 15, 1969, appellant was convicted of murder in the first degree and, after denial

of his post-trial motions, was sentenced to life imprisonment. This appeal followed. Appellant does not contest the sufficiency of the Commonwealth's case. Instead, he alleges three errors which he claims deprived him of a fair trial. First, he alleges that the court committed basic and fundamental error in permitting the Commonwealth to place in evidence the bloodstained clothing of the victim without giving cautionary instructions to the jury that they must not allow themselves to be inflamed or prejudiced by the gory nature of that evidence. *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A. 2d 608 (1950). However, appellant at no time requested such instructions and, therefore, is not permitted to allege error concerning the absence of such instructions now.

Appellant next alleges that the court committed basic error in admitting into evidence a pocketknife which was found on appellant when he was arrested. While we agree that the knife had no legal relevancy, its admission was harmless error. When most of the facts concerning the actual killing are not in dispute, because appellant has admitted shooting the victim six times, we do not see how knowledge of the existence of a pocketknife in the killer's pocket could possibly have affected the jury in reaching its verdict.

Finally, appellant contends that the district attorney should not have been allowed to impeach his own witness, Mattie Ree Mitchell. While we do not agree with the trial court's opinion that the aggressive questioning by the district attorney of Miss Michell on redirect cannot be characterized as impeachment, it is well settled that the use of leading questions is largely within the discretion of the trial court, particularly where in a criminal trial the Commonwealth witness is an associate of the defendant and reluctant to testify against him. *Commonwealth v. Bruno,* 316 Pa. 394,

175 Atl. 518 (1934), *Commonwealth v. Gurreri*, 197 Pa. Superior Ct. 329, 178 A. 2d 808 (1962).

Here, Mattie Ree Mitchell was the appellant's sister-in-law, who had been living in the same house with him for four years, and thought highly of him. She admitted that she would "do nothing to hurt him." Under such circumstances, it was not an abuse of discretion for the court to permit the district attorney to "cross-examine" her.

Judgment of sentence affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took as part in the decision of this case.