Commonwealth *v.* Rivers, Appellant.

320

Submitted September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Launey Earl Rivers, in propria persona,* and *Charles J. Tague,* Assistant Public Defender, and *Peter T. Campana,* Public Defender, for appellant.

*Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., February 2, 1976:

This appeal is taken from appellant's conviction of two counts of conspiracy, two counts of unlawful delivery of a controlled substance, and two counts of unlawful possession of a controlled substance.

Trooper Blackledge, an undercover narcotics agent, related the circumstances surrounding the appellant's arrest. He testified that on March 7, 1974, he went to a residence on Brandon Place in Williamsport where he spoke with Robert Moore. Fifteen minutes later, the appellant arrived. The trooper, posing as a dealer from State College, stated that he wanted to purchase some heroin. After a general discussion of drugs, the appellant asked him if he wanted to buy "a spoon of pure" for

$500.00. The appellant then demonstrated how to separate the heroin and how to mix it with other substances. Trooper Blackledge paid for the drugs and left.

On March 14, 1974, Trooper Blackledge met the appellant in the parking lot of a shopping center near Williamsport. The trooper followed the appellant to an auto store where the trooper indicated that he wanted to buy some more heroin. Arrangements were made to meet later that day at the Brandon Street residence. When the trooper arrived, he engaged Linda Badger and Robert Moore in conversation.[1] Appellant arrived shortly thereafter, and the topic of conversation turned to the purchase of four spoons of heroin. Trooper Blackledge indicated that he was apprehensive about the size of the sale, but he was reassured when the appellant stated that he regularly engaged in much larger sales. Eventually, an agreement was reached for the purchase of twelve twenty-five pack bundles of heroin for $1500.00. Appellant then left the residence. Linda Badger also departed and returned shortly thereafter with the heroin. Trooper Blackledge paid for the drugs and left.

Appellant was indicted on two counts of conspiracy, two counts of unlawful delivery of a controlled substance, and two counts of unlawful possession of a controlled substance. On October 31, 1974, appellant, after trial by jury, was found guilty of all six counts. After timely post-trial motions were filed, argued and denied, the appellant was sentenced to ten to thirty years' imprisonment, plus costs, fine and restitution. This appeal followed.

Appellant makes numerous contentions regarding actions taken by the lower court. Because we find that testimony concerning the appellant's prior criminal ac-

---

1. Robert Moore subsequently pleaded guilty to charges arising out of these transactions. We affirmed the conviction of appellant's other co-conspirator, Linda Badger, in *Commonwealth v. Badger*, 238 Pa. Superior Ct. 284, 357 A.2d 547 (1976).

tivity was improperly received in evidence, we need not reach appellant's other claims.

The following testimony was elicited on defense counsel's cross-examination of Trooper Blackledge:

"Q. During the conversation that Mr. Rivers allegedly was a party to on the 14th, either in the daytime or in the evening, did Mr. Rivers ever state to you that he knew you were an undercover State Police Officer?

"A. No. He mentioned that he didn't really trust me, because he had taken a tape recorder off a man previously, but I don't think he ever mentioned the fact that you are a policeman. He made it clear to me that he wanted me to work and go through Bobby Moore because he didn't trust me that well. *He said he had done a lot of Federal time before.*" (Emphasis supplied). Appellant's counsel immediately moved for a mistrial, which was denied by the lower court.

Our Supreme Court has often stated that "[i]t is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. It has been succinctly stated that '[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit the crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectively to strip him of the presumption of innocence.' *Commonwealth v. Trowery,* 211 Pa. Superior Ct. 171, 173-174, 235 A.2d 171, 172 (1967)." *Commonwealth v. Allen,* 448 Pa. 177, 181-182, 292 A.2d 373, 375 (1972). The evidence of prior criminal activity need not be direct evidence of the other crime. As long as the jury can reasonably infer prior criminal activity from the evidence presented, prejudicial error

has been committed. See *Commonwealth v. Craft*, 455 Pa. 616, 317 A.2d 213 (1974) ; *Commonwealth v. Allen*, supra; *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973).

We believe the instant case is controlled by *Commonwealth v. Clark*, 453 Pa. 449, 309 A.2d 589 (1973). In *Clark*, the witness testified that ". . . [W]e talked over the situation on the street, he stated that everything was all right and the same two men were dealing for him. I asked him if he knew a Clarence Rose; *he stated that he was in prison with him and knew him well. . . .*" The Court stated that "the police officer's statement that the appellant had, prior to his arrest for the instant charges, served time in prison certainly conveys, we believe by the clearest implication, a prior conviction for a serious offense. Unlike a mere passing reference to an arrest or a lineup, the fact that appellant had been placed 'in prison' strongly infers that there has been a conviction." *Commonwealth v. Clark*, supra at 452-453, 309 A.2d at 590-591.

In the instant case, Trooper Blackledge stated that appellant had served "Federal time." Because this is a clear indication of prior criminal activity, and because such activity will predispose the jury to find appellant guilty, prejudicial error has been committed.

The lower court found, however, that because appellant's counsel elicited this testimony, the appellant could not complain that he was prejudiced by the trooper's response. In *Commonwealth v. Dalton*, 199 Pa. Superior Ct. 388, 393-394, 185 A.2d 653, 656 (1962), *allocatur refused* 200 Pa. Superior Ct. *xxxi* (1962), we stated that "[w]here a question is put to a witness which cannot be answered as put, without including in the answer a statement of fact as explanation, complaint cannot be made that the witness added the necessary explanation. . . ." We must determine, therefore, whether the answer should have been reasonably anticipated and whether it

was manifestly invited. See *Commonwealth v. Brown*, 229 Pa. Superior Ct. 211, 324 A.2d 392 (1974); *Commonwealth v. McGonigle*, 228 Pa. Superior Ct. 345, 323 A.2d 733 (1974); *Commonwealth v. Dalton*, supra.

While cross-examining Trooper Blackledge, defense counsel asked ". . . did Mr. Rivers ever state to you that he knew you were an undercover State Police Officer?" The trooper could have simply answered "no." The question was not ambiguously phrased; nor did a complete answer require any explanation. Furthermore, the question was not asked as part of a series of questions dealing with appellant's relationship with the trooper. Trooper Blackledge's answer that appellant had served "Federal time" was not invited nor should it have reasonably been anticipated.

Reversed and remanded for a new trial.

JACOBS, J., dissents.