418 A.2d 340

**COMMONWEALTH of Pennsylvania**

v.

**Robert PERCELL, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 28, 1979.

Filed Dec. 21, 1979.

154

Jack M. Myers, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

Appellant contends that numerous instances of prosecutorial misconduct and trial error warrant granting him a new trial. We disagree and, accordingly, affirm the judgment of sentence.

Appellant was charged with voluntary manslaughter and possession of an instrument of crime generally in the shooting death of Isaac Bordley on June 22, 1975. A jury found appellant guilty of both charges, and, after denial of post-verdict motions, the lower court sentenced appellant to 11½ to 23 months imprisonment on the voluntary manslaughter charge and a consecutive term of five years probation on the weapons charge.[1] These appeals followed.[2]

Appellant contends first that the prosecutor violated the spirit of *Commonwealth v. DuVal*, 453 Pa. 205, 307 A.2d 229 (1973), by suggesting that appellant's son had exercised his privilege not to testify in the present case. In *DuVal*, the Court held that

---

* Chief Justice Michael J. Eagen of the Supreme Court of Pennsylvania, and Judge Warren K. Hess of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

1. This was appellant's second trial arising out of Bordley's death. Appellant had been convicted of the same charges in an earlier trial, but the lower court in that case granted appellant a new trial after reviewing post-verdict motions.

2. Although appellant's post-verdict motions did not include the specific issues treated herein, appellant did raise these issues in his brief in support of the motions, and the lower court considered them in denying post-verdict relief. Accordingly, since this case was tried before the effective date of *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979), we may consider the issues raised herein.

the prosecution, once informed that a witness intends to claim a privilege against self-incrimination, commits error in calling that witness to the stand before the jury where the witness is a person (co-defendant, accomplice, associate, etc.) likely to be thought by the jury to be associated with the defendant in the incident or transaction out of which the criminal charges arose.

*Id.*, 453 Pa. at 217, 307 A.2d at 234. In so holding the Court recognized that jurors might unjustifiably draw an inference of guilt from a witness' refusal to testify and transfer such negative inference to defendant because of his association with the witness. *Id.*, 453 Pa. at 213–14, 307 A.2d at 232–33.

In the present case the prosecutor was aware that appellant's son would invoke his privilege against self-incrimination if called to testify. Although the Commonwealth never called appellant's son as a witness, appellant contends that the prosecutor circumvented *DuVal* by asking certain questions of a police detective, by asking appellant if he knew why his son did not wish to testify, and by commenting on the son's absence from the trial. We disagree. The prosecutor's questioning of the police detective concerning the son's role in the recovery of the homicide weapon in no way implied to the jury that the son had chosen to remain silent. Additionally, although during the cross-examination of appellant the prosecutor alluded to the son's unwillingness to testify, she did not intimate that this unwillingness resulted from fear of self-incrimination. Moreover, the trial court sustained appellant's objection to this line of questioning. Finally, although we strongly disapprove of the prosecutor's tactic during closing argument of commenting on the son's failure to testify, we are satisfied beyond a reasonable doubt that such error was harmless. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

Appellant contends next that the prosecutor's attempt to impeach one of appellant's witnesses by evidence of prior bad acts not resulting in convictions was sufficiently prejudicial to warrant a new trial. At trial appellant examined Russell Kolins, a private investigator who had provided

services for appellant in this case. On cross-examination the prosecutor attempted to impeach Kolins by referring to instances in which Kolins was investigated by the District Attorney's office and questioned by the judge who presided over the first trial of this case.

While it is true that a witness may not be impeached by evidence of prior bad acts not resulting in criminal convictions, *Commonwealth v. Katchmer*, 453 Pa. 461, 464, 309 A.2d 591, 593 (1973), we hold that the attempted impeachment in the present case did not unfairly prejudice appellant. The trial court sustained appellant's timely objections to the questions and issued clear instructions to the jury to disregard the questions. In *Commonwealth v. Gardner*, 246 Pa.Super. 582, 371 A.2d 986 (1977), we noted that "[u]nder our law, prejudice resulting from erroneously admitted evidence may be rectified by cautionary instructions. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Murray*, 437 Pa. 326, 263 A.2d 886 (1970). The same should be true where the evidence is never admitted." *Id.*, 246 Pa.Super. at 594, 371 A.2d at 992. *A fortiori*, the same should be true where the matter in question is not evidence at all, but is only a question to which objection has been sustained.

Appellant contends next that the prosecutor impermissibly asked appellant's daughter leading questions on direct examination without first establishing either surprise or witness hostility. Appellant's objections to all of the questions complained of on this appeal were sustained, thereby minimizing any potential prejudice to appellant. Moreover, in *Commonwealth v. Settles*, 442 Pa. 159, 275 A.2d 61 (1971), our Supreme Court stated that "it is well settled that the use of leading questions is largely within the discretion of the trial court, particularly where in a criminal trial the Commonwealth witness is an associate of the defendant and reluctant to testify against him." *Id.*, 442 Pa. at 162, 275 A.2d at 63. In *Settles*, the Court held that the trial court had not abused its discretion in permitting the prosecutor to examine its own witness as if on cross-examination where the witness was the sister-in-law of defendant

and had lived in the same house with him for four years. *See also Commonwealth v. Bruno*, 316 Pa. 394, 175 A. 518 (1934) and *Commonwealth v. Gurreri*, 197 Pa.Super. 329, 178 A.2d 808 (1962). Similarly, we hold in the present case that the trial court did not abuse its discretion in allowing some leading questions inasmuch as the witness had clearly demonstrated her reluctance to cooperate with the prosecutor.

Appellant contends next that the prosecutor impermissibly attempted to question him concerning a prior misdemeanor conviction. On cross-examination the prosecutor asked appellant, "Anything happen to you in 1972 that would prevent you from now and evermore from having a license to carry a gun?" Appellant's counsel's objection to this question was sustained.

"It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge." *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). Moreover, "[a]s long as the jury can reasonably infer prior criminal activity from the evidence presented, prejudicial error has been committed." *Commonwealth v. Rivers*, 238 Pa.Super. 319, 322–23, 357 A.2d 553, 555 (1976). Accordingly, in *Rivers*, we held unfairly prejudicial a witness' statement that the appellant "had done a lot of Federal time before." *Id.*

We conclude that the question here complained of did not unfairly prejudice appellant. There was no evidence before the jury which directly or indirectly connected appellant with a prior crime; there was only a question, to which objection was sustained. In addition, the suggestion of prior criminal conduct raised by the question was exceedingly attenuated. Accordingly, we do not believe that the jury could "reasonably infer prior criminal activity" therefrom. *Id.*

Appellant contends next that several instances in which the prosecutor expressed her personal opinion as to his credibility warrant the granting of a new trial. On one occasion during the cross-examination of appellant the pros-

ecutor, in apparent response to an answer given by appellant,[3] stated, "Must be lying now." The notes of testimony reveal that the prosecutor was "whispering" when she made this statement and that defense counsel did not hear the remark. The trial judge, who also did not hear the remark, stated in his opinion that "[e]xcept. for the stenographer, who was seated close by, her statement was apparently inaudible to all, including the jury."[4] In addition, during her closing argument, the prosecutor said that appellant "invent[ed]" his version of the incident and "had the unique ability to mold the testimony, if he so chose, to testify to meet his needs."

It is clear that " '[i]t is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence . . . of the defendant.' " *Commonwealth v. Potter*, 445 Pa. 284, 286, 285 A.2d 492, 493 (1971) (quoting ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function § 5.8(b) (Prosecution Function) (Approved Draft 1970)).

> But even where the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. [Citations omitted.] The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968).

*Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). *See also Commonwealth v. Glass*, 486 Pa. 334, 405 A.2d 1236 (1979) (plurality opinion).

---

**3.** Appellant stated that he had never again seen the man who he claimed started the shooting incident which led to the victim's death.

**4.** The Commonwealth contends that the court reporter misheard the remark, and that, in fact, the prosecutor had said "Must be on the lam now." Although the Commonwealth's version of the prosecutor's statement would not be illogical under the circumstances, the Commonwealth never objected to the transcript and therefore is bound by it. Pa.R.A.P. 1922; *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974). *See also* 12 P.S. § 1199.

Employing the above standard, the Court in *Stoltzfus* found no abuse of discretion in the trial court's refusal to declare a mistrial when the prosecutor stated: "[I]f it weren't for the tragedy of the situation, I would sometimes picture a Keystone Cop's testimony" and "If it weren't for the tragedy of this case, those lines would be some of the funniest lines in the court room, because they are utterly unbelievable." 462 Pa. at 60, 337 A.2d at 881–82.

In the present case, although we strongly disapprove of the prosecutor's comments referred to above, we find them to be even less offensive than those at issue in *Stoltzfus*, where motion for mistrial was held to have been properly denied. We cannot say that their "unavoidable effect would be to prejudice the jury . . . so that they could not weigh the evidence and render a true verdict."

Appellant contends finally that the trial court erred in admitting evidence that Clayton Thomas, a key Commonwealth witness, had made a prior statement to police which was consistent with his testimony at trial. On direct examination, Thomas testified that he had seen appellant fire the fatal shots at the victim. On cross-examination, Thomas indicated that he had given a statement to appellant's attorney approximately eighteen months after the incident in which he claimed not to have actually seen appellant shoot the victim. On redirect examination, the witness stated that his trial testimony was consistent with a statement which he had made to police one month after the incident.

We find no error in the admission of the prior consistent statement. It is well settled that "prior declarations of a witness, which are consistent with his present testimony, may be admissible to corroborate his present testimony if it be alleged that the witness' present testimony is recently fabricated, or if it be claimed that the witness is testifying from corrupt motives." *Commonwealth v. Wilson*, 394 Pa. 588, 603, 148 A.2d 234, 242, *cert. denied* 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959). *See also Commonwealth v. Bennett*, 471 Pa. 419, 370 A.2d 373 (1977); *Com-*

monwealth v. Gaddy, 468 Pa. 303, 362 A.2d 217 (1976); *Commonwealth v. Gore*, 262 Pa.Super. 540, 396 A.2d 1302 (1978). Evidence of Thomas' prior inconsistent statement was sufficiently suggestive of recent fabrication to warrant introduction of the fact that the witness had made an earlier consistent statement. *Cf. Commonwealth v. Vento*, 410 Pa. 350, 189 A.2d 161 (1963); *Commonwealth v. Cooper*, 230 Pa.Super. 204, 327 A.2d 177 (1974).

Further justification exists for admission of the fact of Thomas' prior consistent statement. Thomas' testimony during cross examination suggested that the police had threatened him with prosecution for an unrelated homicide unless he gave them information regarding appellant. Accordingly, evidence of Thomas' prior consistent statement was admissible to rebut the implication that he was "testifying from corrupt motives." *Commonwealth v. Wilson, supra*, 394 Pa. at 603, 148 A.2d at 242. Moreover, the evidence supports the finding that Thomas' prior declaration was made "before the asserted corrupt motive existed." *Commonwealth v. Cooper, supra*, 230 Pa.Super. at 207, 327 A.2d 179.[5]

Judgment of sentence affirmed.

EAGEN, J., files a dissenting opinion.

EAGEN, Judge, dissenting:

I am constrained to dissent.

The prosecutor during cross-examination of a defense witness who investigated the crimes involved made repeated inquiry into alleged misconduct by that witness-investigator. These inquiries were made despite numerous objections which the court sustained. At the beginning of this line of

5. Appellant raises several additional contentions which we herein note and reject. Appellant contends that he was prejudiced by the prosecutor's attempted introduction of photographs of the crime scene before the corpus delicti had been established. However, the record reveals that the prosecutor substantially complied with the trial judge's rulings temporarily excluding the photographs; moreover, any conceivable prejudice resulting from premature introduction of the photographs was eliminated shortly thereafter when the

questioning, defense counsel objected. This objection was sustained, but a mistrial denied. Given the prosecutor's continuing inquiry, I believe a mistrial should have been declared when the objections were subsequently sustained. The continuous inquiry by the prosecutor precludes me from agreeing that the cautionary instructions were here adequate to cure any prejudice.

Commonwealth linked them up to the case through the testimony of subsequent witnesses.

Appellant contends also that the prosecutor allowed members of the jury to see an allegedly prejudicial photograph of one of appellant's witnesses, contrary to the court's ruling against the use of the photo. (The photograph was a "mug shot" taken of the witness after a prior arrest.) Upon questioning the jury, the trial court determined that four jurors had seen the photograph but none were able to identify the subject or attached any significance to it. Accordingly, appellant suffered no prejudice therefrom.

Appellant contends further that the prosecutor improperly attempted during his cross-examination to elicit testimony concerning suggestive statements allegedly made to members of appellant's family. The trial judge sustained objections to the prosecutor's questions and issued a cautionary instruction to the jury, all of which served to offset any potential prejudice to appellant.

Appellant contends finally that the trial court erred in not giving his requested jury instruction on self-defense. Although appellant testified at trial that he fired several shots into the air and not at the victim, appellant introduced no evidence whatsoever to suggest that he was defending himself. Accordingly, the trial court correctly refused to give the requested instruction.