J-A23005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES CUBBINS, | : | |
| | : | |
| Appellant | : | No. 1081 WDA 2014 |

Appeal from the Judgment of Sentence entered on June 24, 2014
in the Court of Common Pleas of Allegheny County,
Criminal Division, No. CP-02-CR-0003993-2013

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:         **FILED SEPTEMBER 29, 2015**

James Cubbins ("Cubbins") appeals from the judgment of sentence imposed following his convictions of rape by forcible compulsion, unlawful contact with a minor, and corruption of minors.  ***See*** 18 Pa.C.S.A. §§ 3121(a)(1); 6318(a)(1); 6301(a)(1)(i).  We affirm.

The trial court set forth the relevant underlying facts as follows:

[T]he victim, [J.B.], testified that she had known [Cubbins] since July[] 2010, as he was a contractor who worked with her father[, S.B.].  In 2012, while she was fifteen years old, due to family circumstances, [J.B.] was residing with her father and [Cubbins] in an apartment.  [J.B.] stated that one day in July, after she returned home from her summer job, she was watching TV in her room when [Cubbins] entered the room.  She stated that he was "drunk as usual," sat down on her bed, and asked her if she wanted to have sex.  She declined.  [J.B.] testified that he got on top of her, forced her legs open, took off her pants and underwear and raped her.  She disclosed [the rape] to her boyfriend, on February 13, 2013[,] at a point when [Cubbins] was not residing in the apartment, and he encouraged her to tell

her father what had happened. She [told] her father the following day, and he promptly took her to the police ….

Trial Court Opinion, 1/26/15, at 3 (citations omitted).

Cubbins was arrested and charged with the above-mentioned crimes. The case proceeded to a jury trial in March 2014. The jury found Cubbins guilty of all of the crimes. The trial court sentenced Cubbins to ten to twenty years in prison on the rape conviction, a consecutive probation term of three years on the unlawful contact with a minor conviction, and no further penalty for the corruption of minors conviction. Cubbins was also required to register as a sexual offender for life.

Cubbins filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement. The trial court issued an Opinion.[1]

On appeal, Cubbins raises the following questions for our review:

I.    Did the trial court abuse its discretion when it failed to grant a mistrial after [a] Commonwealth witness, Detective Scott Rick ["Detective Rick"], testified that [Cubbins] had been incarcerated?

II.   Did the trial court err in admitting cumulative evidence and denying a mistrial based upon testimony related to [Cubbins's] drinking habits, as this evidence was unduly prejudicial and had no bearing on the factual issues present in the case at bar?

Brief for Appellant at 5 (capitalization omitted).

---

[1] Cubbins's trial attorney passed away following the filing of the Concise Statement, but prior to the filing of Cubbins's appellate brief. The trial court subsequently assigned the Allegheny County Public Defender's Office to represent Cubbins.

In his first claim, Cubbins contends that the trial court should have granted a mistrial after Detective Rick testified that Cubbins had been in prison following the rape. *Id*. at 9. Cubbins argues that he was prejudiced by the statement because the jury could infer that he was involved in prior criminal activity. *Id*. at 11, 13-15, 16; *see also id*. at 15, 17, 19, 20 (wherein Cubbins points out that the trial court did not offer a curative instruction following Detective Rick's prejudicial statement). Cubbins concedes that his own counsel elicited Detective Rick's testimony when counsel asked why J.B. did not report the incident for several months. *Id*. at 10-11. However, Cubbins argues that counsel's elicitation of the testimony was irrelevant because the trial court had previously ruled that such a reference was prejudicial and must be avoided. *Id*. at 18-20. Cubbins thus claims that, based upon the trial court's ruling that Cubbins's prior incarceration was inadmissible, Detective Rick's prejudicial statement, and the absence of a cautionary instruction, the trial court should have granted a mistrial. *Id*. at 20-21.

Our standard of review is as follows:

A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*) (citation omitted).

Evidence of crimes or prior bad acts unrelated to the charge for which the defendant is being tried is generally inadmissible. *Commonwealth v. Reid*, 99 A.3d 427, 451 (Pa. 2014); *see also Commonwealth v. Aguado*, 760 A.2d 1181, 1187 (Pa. Super. 2000) (*en banc*) (stating that "[e]vidence of prior criminal activity is probably only equaled by a confession in its prejudicial impact upon a jury.").

> There is no *per se* rule that requires a new trial for a defendant every time there is a reference to prior criminal activity. We have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy. Further, the reference to prior criminal activity must be prejudicial to the defendant, with prejudice resulting where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense.

*Commonwealth v. Morris*, 519 A.2d 374, 377 (Pa. 1986) (citations, brackets, and quotation marks omitted).

In general, however, "a party may not object to improper testimony which he himself elicits." *Commonwealth v. Yarris*, 549 A.2d 513, 525 (Pa. 1988); *see also Commonwealth v. Manley*, 985 A.2d 256, 270 (Pa. Super. 2009). Indeed, "[w]hen ... defense counsel puts a question to a witness that cannot be answered fairly without a statement of fact as explanation, then the explanation is deemed to be invited by counsel, and [a] complaint that it was added to the answer cannot be made."

*Commonwealth v. Miller*, 481 A.2d 1221, 1222 (Pa. Super. 1984) (citation omitted). However, where a witness could have responded on cross-examination with a simple "yes" or "no" answer, counsel could not have reasonably anticipated or manifestly invited a response including improper and prejudicial testimony against his client. *Commonwealth v. Rivers*, 357 A.2d 553, 555-56 (Pa. Super. 1976).

Here, prior to trial, the parties and the trial court agreed that the fact of Cubbins's incarceration at the time J.B. reported the incident would not be admissible at trial. N.T., 3/26-28/14, at 10-14. Thereafter, Cubbins's counsel's cross-examination of Detective Rick regarding the time it took for J.B. to report the incident elicited the following testimony:

> Q: … When [J.B.] said to you she was afraid for herself and her father, did you ask her why?
>
> A: I don't recall.
>
> Q: Do you think that that may have been an important factor for you to ask her about in an alleged sex rape case?
>
> A: Everyone deals with that differently, and her interpretation could be different than mine.
>
> Q: Why didn't you ask her to see what her interpretation was so you could disclose that and be able to tell the jury about it?
>
> A: My concern was to get the facts of the case on what happened.
>
> Q: But her being afraid or if she was afraid, because she said to the jury she wasn't, but her being afraid, wasn't that a fact of this case that you'd want to know about …? Yes or no, sir. …
>
> A: That's for her to answer why she was afraid.

***

Q: … Didn't you want to ask her why she was afraid? Didn't you think that was germane in this case?

A: Through my investigation, I found out why she was afraid and why she finally came forward.

Q: Okay. Did you have it in your police report?

A: There is a part of [that] there, yes, it's in there.

Q: That she's afraid for herself and her father?

A: Through my investigation, I had found that she was afraid of him because they lived together.

Q: Okay.

A: Because of the fact that he was no longer in the residence, because he was in Allegheny County Jail --

[Defense Counsel]: That's not responsive to the question. I'm going to object and move for a mistrial.

*Id*. at 359-61. The trial judge held a sidebar during which defense counsel stated that he would have to deal with the consequences of his questions. *Id*. at 362. Importantly, counsel did not seek a cautionary instruction during the sidebar. *Id*. at 361-62.

Cubbins's counsel repeatedly asked Detective Rick why J.B. was afraid and waited several months before reporting the crime. By repeatedly asking these questions, Cubbins should have "reasonably anticipated" that Detective Rick would respond with a more detailed explanation as to J.B.'s fear, and her delay in reporting the incident until Cubbins was out of the

home. Although Cubbins objected to Detective Rick's testimony as to the fact that Cubbins was in prison, we conclude the record establishes that this testimony was elicited by Cubbins's counsel, and Cubbins must accept the answer given by Detective Rick. **See Miller**, 481 A.2d at 1222 (stating that "the defendant must assume the risk of his counsel's questions and he cannot benefit on appeal when his own cross-examination elicited an unwelcome response.") (citation omitted); **Commonwealth v. Gilliard**, 446 A.2d 951, 954 (Pa. Super. 1982) (rejecting the appellant's claim that trial court improperly denied his motion for mistrial after a witness testified that the appellant had other charges pending against him, when such testimony was elicited by appellant's own counsel); **see also Yarris**, 549 A.2d at 525.

With regard to the lack of a cautionary instruction, we note that Cubbins's counsel never asked for such an instruction. Thus, this claim is waived on appeal. **See Commonwealth v. Bryant**, 855 A.2d 726, 739 (Pa. 2004) (stating that a "[f]ailure to request a cautionary instruction upon the introduction of evidence constitutes a waiver of a claim of trial court error in failing to issue a cautionary instruction."). As a result, Cubbins is not entitled to relief on his first claim.

In his second claim, Cubbins contends that the trial court erred in admitting the evidence related to his drinking habits, as such evidence was prejudicial and had no bearing on the relevant issues in the case. Brief for Appellant at 22, 26-27. Cubbins points to three separate instances during

trial where the Commonwealth elicited testimony regarding his intoxication at various times, including on the date of the incident. *Id*. at 22, 24. Cubbins asserts that his prior bad acts could not be admitted to show that he was "a person of unsavory character and thus inclined to have committed the crimes with which he is being charged." *Id*. at 23; *see also id*. at 24-25 (stating that there was no probative value of admitting the cumulative evidence that he was a drunkard). Cubbins claims that the trial court should have sustained his objections to this evidence, directed the witnesses to avoid this topic, and offered to provide cautionary instructions to the jury. *Id*. at 26-27. Cubbins further argues that the error was not harmless because there was no substantially similar evidence presented at trial and the only evidence of guilt was J.B.'s testimony. *Id*. at 25-26.

> Our standard of review regarding evidentiary issues is well settled. The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (citations and quotation marks omitted).

> Evidence of prior bad acts committed by a defendant is not admissible solely to show the defendant's bad character or his propensity for committing bad acts. However, evidence of prior bad acts is admissible where there is a legitimate reason for the

- 8 -

evidence, such as to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

*Commonwealth v. Page*, 965 A.2d 1212, 1219 (Pa. Super. 2009) (citation and emphasis omitted).

Here, the trial court addressed Cubbins's claims as follows:

The victim, [J.B.,] testified that [Cubbins] was "drunk as usual" when he raped her. The statement … was offered not to show [Cubbins's] general bad character or propensity to commit a crime, but in the context of establishing her living environment and relationship to [Cubbins,] as well as her observations during the relevant time frame. This comment provides context for later testimony that she was afraid of [Cubbins] when he was drunk and for her explanation as to why she delayed reporting until she was certain she was free from him.

[C.D.], the victim's seventeen[-]year[-]old ex-boyfriend, testified that [J.B.] eventually confided in him regarding what had happened between her and [Cubbins] the previous summer. He stated that he encouraged her to talk to her father about what had happened and said that he was present the next day when she did so. On direct examination, as part of the foundation laid regarding the witness's knowledge of the alleged victim, [Cubbins], and the living arrangement in the home, [C.D.] testified that he had met [Cubbins] only one time, at a New Year's Eve party the night he started dating [J.B.] [Cubbins] had a beer in his hand and appeared to [C.D.] to be drunk, have an angry tone to his voice, and act possessively toward [J.B.] Specifically, [C.D.] indicated that [Cubbins] did not want [C.D.] and [J.B.] to date. This testimony, observing [Cubbins] intoxicated, angry, and possessive of [J.B.,] adds credibility to the victim's testimony. As neither drinking nor being intoxicated at a party is a crime, the prejudice to [Cubbins] of a witness observing his intoxication (on New Year's Eve) is indeed slight.

[S.B.], the victim's father, testified regarding the living arrangements between himself, his daughter, and [Cubbins]. [S.B.] testified that he had known [Cubbins] in a professional capacity for several years as he was [a] general contractor and [Cubbins] was a subcontractor specializing in flooring. The professional relationship became a friendship and eventually [Cubbins] and [S.B. and J.B.] moved in together[,] while [S.B.] attempted to close his business in Pennsylvania and move with the rest of his family to North Carolina. On Valentine's Day of 2013, the three of them lived together in an apartment in Bradford Woods leased by [Cubbins]. [Cubbins] was out of the residence on a temporary basis and, through his sister, had notified [S.B. and J.B.] to vacate the residence. [S.B.] described [J.B.'s] demeanor when she disclosed [the incident] to him as inconsolable, crying while she spoke. [S.B.] took [J.B.] to the police the next day. [J.B. and S.B.] moved out of the apartment and [J.B.] had no further contact with [Cubbins].

On cross-examination, counsel for [Cubbins] attempted to impeach [S.B.] by eliciting testimony that [Cubbins] had told [S.B.] at a golf outing in September 2012 that he and his daughter had to move out of the apartment. Counsel attempted to offer this earlier verbal eviction notice as motive for [J.B.] to fabricate a rape allegation in February 2013. The Commonwealth, on redirect, inquired as to why [S.B. and J.B.] had not moved out after the golf outing. [S.B.] testified that [Cubbins] was drunk at the golf outing and started a fight. [Cubbins] threw multiple golf bags and told [S.B.] he had 24 hours to get out [of] the house. [S.B.'s] testimony[,] and his knowledge of [Cubbins's] demeanor while intoxicated[,] not only explains why [S.B.] did not take seriously this eviction, but also adds credibility to the victim's statement that she was afraid of [Cubbins] when he drank. As above, [Cubbins's] conduct was not criminal, and was not elicited to suggest a propensity for criminal behavior, but rather rebutted [Cubbins's] defense of motive to fabricate the allegation. The testimony was relevant, not unduly prejudicial or cumulative and [the trial c]ourt did not err in permitting its introduction into evidence.

Trial Court Opinion, 1/26/15, at 6-8 (citations omitted).

We agree with the sound reasoning of the trial court. Contrary to Cubbins's assertion, J.B.'s account of the unsavory dynamic of her relationship with Cubbins formed the natural development of the facts, and therefore did not constitute impermissible character evidence. **See Commonwealth v. Green**, 76 A.3d 575, 584 (Pa. Super. 2013) (stating that evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.") (citation omitted). Indeed, J.B.'s statements about Cubbins being drunk was not offered for the truth of the matter asserted, but rather to shed light on the relationship between Cubbins and J.B., and supplemented the description of the incident. Likewise, C.D.'s testimony provided necessary context to his interactions with Cubbins on New Year's Eve. Finally, S.B.'s testimony formed the sequence of events surrounding the assault, and the dissolution of the living arrangement with Cubbins. **See id**. As such, this evidence was relevant, probative, and formed an integral part of the natural development of the case history. **See Commonwealth v. Powell**, 956 A.2d 406, 419-20 (Pa. 2008) (concluding that the trial court did not err in admitting victim's mother's statement that appellant "put his hands on her when he was drunk or high" because the statement was not offered to demonstrate appellant's propensity to commit a crime, but to establish the family environment and relationships between appellant, victim, and victim's mother) (quotation marks omitted); **see also Reid**, 99

A.3d at 520 (stating that defendant is not entitled to relief for cumulative errors where each error, individually, did not entitle him to relief).[2]  Thus, Cubbins's second claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/29/2015

---

[2] We note that Cubbins argues that the trial court abused its discretion in admitting into evidence S.B.'s testimony referring to Cubbins's "drunken stupor" on the golf course in 2012.  Brief for Appellant at 22 (citing N.T., 3/26-28/14, at 306).  However, Cubbins never objected to this testimony, which was elicited while his counsel was cross-examining S.B.  Thus, the issue is waived on appeal.  **See Powell**, 956 A.2d at 419 (failure to raise a contemporaneous objection results in the waiver of a claim on appeal); **see also** Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).  Even if the issue was not waived, Cubbins would not be entitled to relief.  As noted above, S.B.'s testimony provided context to the end of his and J.B.'s living arrangement with Cubbins.